UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MUTUAL MARINE OFFICE, INC., PACIFIC MUTUAL MARINE OFFICE, INC., MUTUAL INLAND MARINE OFFICE, INC. and MUTUAL MARINE OFFICE OF THE MIDWEST, INC. , <br><br> Petitioners, <br><br> -against- <br><br> TRANSFERCOM LIMITED, <br><br> Respondent. | **MEMORANDUM OPINION AND ORDER** <br><br> 08 Civ. 10367 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

    Petitioners Mutual Marine Office, Inc., Pacific Mutual Marine Office, Inc., Mutual Inland Marine Office, Inc. and Mutual Marine Office of the Midwest, Inc. (collectively, "MMO"), have petitioned the Court to confirm an arbitration award rendered in their favor against Respondent Transfercom Limited ("Transfercom"), as successor in interest to Yasuda Fire & Marine Insurance Co., Ltd. ("Yasuda"). (Amended Petition ¶ 14; Response to Amended Petition ¶ 2)  For the reasons stated below, MMO's petition is GRANTED, except with respect to the form of the proposed judgment.

## DISCUSSION

### I. BACKGROUND

    This action arises from an arbitration between MMO and Yasuda concerning Yasuda's obligations under certain marine reinsurance contracts.  Among other things, MMO requested that the arbitration panel order Yasuda to pay it "$690,599.70 in unpaid balances" and to "post a letter of credit in the amount of

$369,706.35 to secure Yasuda's portion of MMO's outstanding loss reserves." (Ex. B to Pet. Ex. D, at 20)  On July 29, 2008, the panel rendered an award in MMO's favor (the "Final Award").  The Final Award states, inter alia, that:  (1) "Within thirty (30) days, Yasuda shall pay to [Mutual Marine] $690,599.70 in satisfaction of unpaid balances due under the reinsurance Contracts," and (2) "Within thirty (30) days, Yasuda shall post a letter of credit for $365,538.89 to secure reserves for outstanding losses." (Pet. Ex. A at 2)

After the Final Award was issued, Transfercom informed its counsel that at some time prior to the arbitration, Yasuda – Transfercom's predecessor in interest – had posted a letter of credit in the amount of $769,191.11 to secure reserves under the contracts at issue in the arbitration. (Keely Decl. ¶ 2; Walter Decl. ¶ 5)  Transfercom's counsel informed MMO of the letter of credit, but MMO took the position that under the Final Award, Transfercom was required to post a new letter of credit for $365,538.89. (Keely Decl. ¶ 3)

Transfercom then wrote to the arbitration panel, stating that it "believe[d] that . . . [the Final Award] [wa]s already satisfied by a letter of credit previously posted in favor of MMO," and requesting that the panel "clarify" the sentence in the Final Award concerning the letter of credit "to state as follows:  A majority of the Panel finds that MMO is entitled to security for reserves for outstanding losses in the amount of $365,538.89.  Accordingly, the collateral posted for [the $769,191.11 letter of credit] . . . shall be reduced such that the letter of credit is sufficient to secure $365,538.89." (Pet. Ex. C at 1-2)  MMO objected to Transfercom's request on the ground that under the

functus officio[1] doctrine, the panel "lack[ed] any power to re-examine" its decision, and that none of the three exceptions to that doctrine – which apply where "there is a mistake apparent on the face of the award," where the award "does not adjudicate an issue which has been submitted," or where there is an "ambiguity which requires clarification" – were applicable. (Pet. Ex. D at 1-3 (quoting Colonial Penn Ins. Co. v. The Omaha Indemnity Co., 943 F.3d 327, 331 (3d Cir. 1991)).

On October 11, 2008, the panel agreed that it was "without authority to consider" Transfercom's request "on the basis of the . . . functus officio" doctrine. (Pet. Ex. E) Transfercom has not posted a new letter of credit, however.

## II. CONFIRMATION OF THE FINAL AWARD

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 201 et seq., applies to the Final Award. (See Pet. Br. at 4; Pet. ¶ 14; Resp. ¶ 14) Therefore, the Court must confirm the Final Award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention," 9 U.S.C. § 207, namely, grounds for vacating, modifying or correcting the award as provided under 9 U.S.C. §§ 10-11. See 9 U.S.C. § 208 (providing that the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., will apply in cases governed by the Convention so long as they are not in conflict with the Convention); Hall Street Assoc., L.L.C. v. Mattel, Inc., 128 S. Ct. 1396, 1402 (2008) ("Under the terms of § 9 [of the Federal Arbitration Act], a court 'must' confirm an

---

[1] "Functus officio" is Latin for "having performed his or her office," and is a doctrine providing that, under certain circumstances, when the duties and functions of a legal officer or official body's commission have been fully accomplished, that officer or body has no further authority or legal competence. Black's Law Dictionary 696 (8th ed. 2004).

3

arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11.  Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one.").

In this case, neither side contends that the Final Award should be vacated, modified, or corrected.  Accordingly, the Court will confirm the Final Award.

### III.     TRANSFERCOM'S COMPLIANCE WITH THE FINAL AWARD

The nub of the parties' dispute here is not whether the Final Award should be confirmed, but instead whether Transfercom should be deemed to have fully satisfied the Final Award in light of the existing letter of credit, or whether the Final Award requires Transfercom to post a new letter of credit in the amount of $365,538.89.  "At the confirmation stage, the court is not required to consider the subsequent question of compliance."  Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007).  Here, however, Transfercom has asked this Court to issue a "judgment declaring that Transfercom has fully complied with and satisfied all requirements of the Final Award. . . . Such a judgment will properly give effect to the decision of the arbitrators in the Final Award and provide finality to the parties' dispute."  (Transfercom Br. 7); see also Letter of Sean Thomas Keely dated February 3, 2009 ("Keely Ltr."), at 3 (acknowledging that the Court may "treat MMO's filing as a petition to confirm and motion to enforce (and Transfercom's response as a cross-motion).")  Similarly, MMO states that "it is the Court's obligation to determine whether the Final Award does or does not require [Transfercom] to post a letter [of] credit."  (Letter of Andrew J. Costigan dated February 3, 2009, at 4) Given the parties' request, their opportunity to fully brief the issue of satisfaction and to submit relevant evidence, and considering the interests of judicial economy and cost savings for the parties, the Court will address the issue now.

4

"In the context of an arbitration, the judgment to be enforced encompasses the terms of the confirmed arbitration awards and may not enlarge upon those terms." Zeiler, 500 F.3d at 170.  Thus, the question before this Court is whether Transfercom has complied with the terms of the Final Award.  On its face, the Final Award unambiguously requires Transfercom to "post a letter of credit for $365,538.89" "[w]ithin thirty (30) days" of July 28, 2008.  (Pet. Ex. A)  It is undisputed that Transfercom did not post a letter of credit for $365,538.89 within 30 days of July 28, 2008.  Therefore, the Court concludes that Transfercom has not fully complied with the Final Award.

Transfercom argues that it was not required to post a new letter of credit because the existing letter of credit "satisfies the requirement of the Final Award," in that it "applies to the losses and contracts at issue in the Final Award and . . . far exceeds the amount required by the award."  (Keely Letter at 4)  However, the terms of the Final Award do not provide that Transfercom may satisfy its obligations with any existing letter of credit applying to the losses and contracts at issue in the Final Award.  On its face, the Final Award requires Transfercom to post a letter of credit for a specific amount within a specific time period, which Transfercom did not do.

If Transfercom believed that the losses at issue in the arbitration were covered by an existing letter of credit, it could and should have presented that argument to the arbitrators before the Final Award was issued.  It failed to do so.  It would be improper for this Court to vacate or modify the Final Award on the ground that Transfercom now alleges that such a letter of credit exists.  See, e.g., AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc., 508 F.3d 995 (11th Cir. 2007) (district court

erred in modifying arbitration award to take into account "information available before or during the arbitration that the parties, through lack of diligence, failed to discover"); <u>American Nursing Home v. Local 144 Hotel, Hospital, Nursing Home and Allied Services Union</u>, No. 89-Civ.-1704(DNE), 1992 WL 47553 (S.D.N.Y. Mar. 4, 1992) ("The Employers are precluded from asserting their impasse and posting defense before this Court because without excuse or justification, they failed to present such a defense to the Arbitrator. Failure to raise an issue in an arbitration proceeding waives the issue in a confirmation or enforcement proceeding."). It would also be improper for this Court to remand the issue to the arbitrators for clarification, both because there is no ambiguity in the Final Award and because the arbitration panel has already considered this issue and concluded that Transfercom's request to take into account the existing letter of credit would require a re-examination of issues that the panel has already decided. (Pet. Ex. E) As MMO notes, if the panel believed that this issue was one that could be resolved through a "clarification" of an ambiguity in the Final Award, it would not have been barred from reconsideration by the <u>functus officio</u> doctrine, as it concluded it was. <u>Id.</u>; <u>see also</u> <u>LTI Int'l, Inc. v. MCI Telecomm. Corp.</u>, 69 F. Supp. 2d 510, 515 (S.D.N.Y. 1999) (explaining that the purpose of the <u>functus officio</u> doctrine is to "prevent re-examination of an issue," and that the doctrine does not bar arbitrator from deciding an "issue [that] has not been decided previously by the arbitrator" or from clarifying an award).

   Because the Final Award is unambiguous, this Court will direct that judgment be entered based on the language of the Final Award and will order

Transfercom to "post a letter of credit for $365,538.89 to secure reserves for outstanding losses" in accordance with the Final Award.

## IV.     MMO'S SEALING REQUEST

MMO has requested that its petition and any papers offered in support of or in opposition to the petition be placed under seal in accordance with the parties' confidentiality agreement. (Amended Petition ¶ 15; Pet. Ex. G ¶ 3)  For the reasons stated below, MMO's request is denied without prejudice.

"The common law right of public access is firmly rooted in our nation's history." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of access is based on the need for federal courts, although independent – indeed, particularly because they are independent – to have a measure of accountability and for the public to have confidence in the administration of justice." Id. (quoting United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995)).

The Second Circuit has articulated a three-step process for determining whether documents should be placed under seal.  First, a court must determine whether the presumption of access attaches.  A presumption of access attaches to any item that constitutes a "judicial document" – i.e., an "item . . . relevant to the performance of the judicial function and useful in the judicial process." Id. (quotation omitted).  Second, if the court determines that the item to be sealed is a "judicial document," the court must then determine the weight of the presumption of access.  "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Id. (quotation omitted).  "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to

matters that come within a court's purview solely to insure their irrelevance." Id. (quotation omitted). Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it." Id. at 120. (quotation omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Id. (quotation omitted).

   The Second Circuit has further explained that "[d]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. (quoting In re New York Times Co., 828 F.3d 110, 116 (2d Cir. 1987)). "Broad and general findings by the trial court, however, are not sufficient to justify closure." Id. (quotation omitted).

   The petition and submissions that MMO has requested be sealed are clearly "judicial documents." Moreover, there is a strong presumption of access to these submissions because they have "directly affect[ed]" this Court's adjudication of this case. See, e.g., Standard Inv. Chartered, Inc. v. Nat'l Assn. of Sec. Dealers, Inc., No. 07-Civ.-2014, 2008 WL 199537, at *16 (S.D.N.Y. Jan. 22, 2008) ("Motion papers are judicial documents and are thus subject to a strong presumption of access under the First Amendment."). To rebut the strong presumption of access here, MMO must offer specific facts "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 120.

   The only fact offered by MMO here is that the parties have agreed to request that the Court place under seal any document relating to the underlying arbitration, such as the Final Award and briefs submitted to the arbitrators. (Amended

Petition ¶ 15; Pet. Ex. G ¶ 3) MMO has not cited any case suggesting that the mere existence of a confidentiality agreement demonstrates that sealing is "essential to preserve higher values," however. Standard Inv. Chartered, Inc., 2008 WL 199537, at *16. In any event, MMO's request is not "narrowly tailored." Id. For example, it provides for the sealing of documents – such as the Petition and the parties' memoranda of law submitted to this Court – that do not fall within the definition of "Arbitration Information" that is to be kept confidential under the confidentiality agreement. (See Pet. Ex. G. ¶ 2)

Therefore, MMO's sealing request is denied without prejudice. MMO may renew its request by submitting a letter brief and any necessary supporting affidavits (via fax to the Court) within one week of the date of this order.

## CONCLUSION

For the reasons stated above, MMO's petition to confirm the Final Award is GRANTED and MMO's sealing request is DENIED without prejudice. The Clerk of the Court is directed to enter judgment as follows and to close this case:

IT IS HEREBY ADJUDGED AND DECREED that the July 29, 2008 Final Award in the arbitration between the parties to this action is confirmed and;

IT IS FURTHER ADJUDGED AND DECREED that Respondent shall post a letter of credit for $365,538.89 to secure reserves for outstanding losses in accordance with the Final Award.

Dated: New York, New York  
April 15, 2009

SO ORDERED.

_Paul G. Gardephe_  
Paul G. Gardephe  
United States District Judge

9